IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN MARK MORLAND                                            PLAINTIFF

      v.                      CIVIL NO.      2:10-CV-02162

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                            DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

On August 22, 2008, Plaintiff protectively filed for DIB and SSI, alleging disability since April 1, 2005, due to lung problems, hypertension, and left leg problems (Tr. 8, 112-23, 139). The Commissioner denied Plaintiff's applications initially and on reconsideration (Tr. 8, 50-66). An ALJ held a hearing on August 25, 2009, at which Plaintiff testified (Tr. 8, 30-49). The Plaintiff was represented by an attorney at the hearing (Tr. 8, 30-49).

On February 12, 2010, the ALJ rendered a decision finding Plaintiff not disabled (Tr. 8-16). Pursuant to the five-step sequential evaluation found at 20 C.F.R. §§ 404.1520, 416.920,

-1-

the ALJ found that Plaintiff had severe impairments of disorder of hypertension, chronic obstructive pulmonary disease, and osteoarthritis of the left ankle, but that he did not have an impairment, singly or in combination, that met or equaled a listing for presumptive disability (Tr. 10). The ALJ also found that Plaintiff had the residual functional capacity to perform lifting and carry 20 pounds occasionally and 10 pounds frequently, sitting for six hours, and standing and walking for six hours with frequent climbing, balancing, crawling, stooping, and kneeling (Tr. 11). The ALJ further found that Plaintiff must avoid concentrated exposure to pulmonary irritants (Tr. 11). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a janitor and a machine operator (Tr. 14). Relying on vocational expert testimony, the ALJ found that Plaintiff could perform other occupations that exist in significant numbers in the national economy (Tr. 15). As a result, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (Tr. 15). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 1-3). See 42 U.S.C. § 405(g).

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and

work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Applicable Facts

On July 26, 2006 the Plaintiff was seen by Dr. Laurie Fisher complaining of "tightness in his chest" three or four nights prior.  The Plaintiff acknowledged that he had shortness of breath which he related to his smoking.  The Plaintiff's chest x-ray was normal but an EKG showed marked abnormalities according to Dr. Fisher.  The Plaintiff was admitted to the Johnson County Hospital for observation and possible heart catheterization (T. 221)(T. 210-211).

On July 27, 2006 Dr. Gary Fine determined that the EKG was "minimally abnormal" and he ruled out any myocardial necrosis.  After consulting with Dr. Fisher they opted to perform an arteriogram for further evaluation of the Plaintiff (T. 223).  The result of the arteriogram was that the Plaintiff had normal left ventricular function and "insignificant coronary disease" that should be treated conservatively by having the Plaintiff quit smoking, medication for his HDL levels, and weight loss (T. 223-224). The Discharge Summary prepared by Dr. Fisher's states that she "did talk with the patient at length about the importance of stopping smoking and have also encouraged exercise and weight loss". (T. 209).

On September 2, 2008 the Plaintiff filed for Disability Insurance Benefits (T. 114-120) and SSI (T. 121-122) alleging an onset date of April 1, 2005 (T. 133) because of lung problems, hypertension, left leg problems (T. 139).

On October 15, 2008 Stan Reyenga, M.D., Consultative Examiner (CE) for defendant performed a General Physical Exam (Tr. 226-230).  With the exception of shortness of breath and an obese abdomen no abnormalities were noted.

-4-

On November 11, 2008 a Pulmonary Function Study showed "severe obstruction and low vital capacity".  The report stated that COPD may be present and that it may improve with smoking cessation (T. 234).

On November 13, 2008 Dr. Dennis Berner, M.D. interpreted the test results and determined that the "studies are consistent with a moderate degree of obstructive lung disease" (T. 233).

On November 17, 2008 Dr. Ronald Crow provided a Physical RFC determination that found the Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  That he could stand and/or walk and sit for about 6 hours in an 8 hour workday. There were no limitations on the Plaintiff's ability to push and/or pull (T. 238) and no postural limitations (T. 239) or environmental limitations (T. 241).

On January 7, 2009 Dr. Jerry Mann affirmed the assessment made by Dr. Crow (T. 245).

On May 14, 2009 the Plaintiff was seen by Dr. Scott Kuykendall, M.D. who assessed the Plaintiff with Osteoarthritis to the left ankle and COPD and he prescribed Advair 250/50 [1] and Ventolin HFA (albuterol inhalation) [2] .  Dr. Kuykendall opined that the Plaintiff was "totally disabled due to his Osteoarthritis and COPD (T. 251).

On August 17, 2009 Dr. Kuykendall completed a Residual Functional Capacity Questionnaire finding that the Plaintiff's pain would constantly interfere with his attention and

---

[1]Advair is used to prevent asthma attacks. It is also used to prevent flare-ups or worsening of chronic obstructive pulmonary disease (COPD) associated with chronic bronchitis and/or emphysema.  See www.drugs.com Viewed September 15, 2011.

[2]Albuterol inhalation is used to treat or prevent bronchospasm in people with reversible obstructive airway disease. Albuterol is also used to prevent exercise-induced bronchospasm.  See www.drugs.com  Viewed September 15, 2011.

concentration (T. 254), that he could only sit, stand/walk for less than 2 hours in an 8 hour

workday (T. 255), he would need to take unscheduled breaks during a workday, he would have to

use a cane, could never lift anything less than 10 pounds (T. 256), and could never twist, stoop,

crouch, climb ladders or stairs (T. 257).

## IV.   Discussion:

## A.  Listed Impairments

The ALJ determined that the Plaintiff did not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1. (T. 10).  The ALJ found that the opinions of the State agency physicians

that the Plaintiff impairments neither met nor equaled the severity of a listed impairment was

well reasoned and supported by the record. (T. 11).  The Plaintiff does not contest this finding by

the ALJ and the court agrees that the record supports the ALJ determination.

## B.  RFC

The ALJ next determined that the Plaintiff had the RFC to lift/carry 20 pounds

occasionally and 10 pounds frequently, sit, stand/walk for 6 hours; frequently climb, balance,

crawl, stoop and kneel as defined in 20 CFR 404.1567(b) and 416.967(b) [3] except avoidance of

concentrated exposure to pulmonary irritants.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

---

[3] Light work is defined as exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects.... Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  *See Page v. Astrue*,  484 F.3d 1040, 1044 (C.A.8 (Ark.),2007)

404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained

work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all

relevant evidence in the record.  *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the

assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v.*

*Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245

F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent

[claimant] is arguing that residual functional capacity may be proved only by medical evidence,

we disagree."). Even though the RFC assessment draws from medical sources for support, it is

ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§

416.927(e)(2), 416.946 (2006).

The Plaintiff first alleged disability from April 1, 2005 (T. 133) because of lung

problems, hypertension and left leg problems.  As the ALJ noted (T. 12) the Plaintiff sought no

treatment for any of the above alleged impairments until July 26, 2006. (T. 209-210). It is true

that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). It is also true that Plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty).

### 1. COPD

The Plaintiff's first medical record is his visit to the Johnson Regional Medical Center because of shortness of breath and chest pains on July 26, 2006 (T. 221) more than one year after his alleged onset of disability (T. 139).  He had a "very minimal electrocardiogram" (T. 223) but an arteriogram was performed that showed normal left ventricular function and insignificant coronary disease (T. 224).  The Plaintiff admitted that he was a pack a day smoker of cigarettes (T. 210) and that he had suffered shortness of breath with exertion which he related to his smoking. (T. 221) At discharge Dr. Fisher diagnosed the Plaintiff with suspected angina, possible subacute myocardial infarction, nicotine abuse and obesity. Dr. Fisher stated that she talked with the Plaintiff at length about the importance of stopping smoking and that she encouraged him to lose weight. (T. 209).  At the hearing before the ALJ on August 25, 2009 the Plaintiff admitted that he continued to smoke about four cigarettes per day.

The Plaintiff was first diagnosed with COPD as a result of a consultant examination performed by Dr. Reyenga. on October 15, 2008. A subsequent Pulmonary function study according to the test showed a severe obstruction and low vital capacity (T. 234) but Dr. Berner

-8-

interpreted the results as showing a moderate degree of obstructive lung disease. (T. 233).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006). *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits).

We note that before a claimant is denied benefits because of a failure to follow a prescribed course of treatment an inquiry must be conducted into the circumstances surrounding the failure and a determination must be made on the basis of evidence in the record whether quitting will restore Plaintiff's ability to work or sufficiently improve his condition. See 20 C.F.R. §§ 404.1530(a), 416.930(a); *Roth v. Shalala*, 45 F.3d 279, 282-83 (8th Cir.1995); *Kirby v. Sullivan*, 923 F.2d 1323, 1328 n. 2 (8th Cir.1991)*; Burnside v. Apfel* 223 F.3d 840, 844 (C.A.8 (Ark.),2000).

Obviously Dr. Fisher felt that quitting smoking would improve the Plaintiff's condition when she instructed him to stop in July 2006.  It also appears that, while the Plaintiff may have had severe obstruction and low vital capacity, the report stated that the Plaintiff's condition may improve with smoking cessation (T. 234). In fact the Plaintiff testified that testified that the medications prescribed by Dr. Kuykendall were "helping quite a bit" (Tr. 35-36). The Eighth Circuit has held that an impairment that can be controlled by treatment or medication is not

considered disabling. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

###    2. Hypertension

The Plaintiff listed hypertension[4] as one of his illnesses that limited his ability to work. (T. 139). Risk factors for hypertension are age, race, family history, overweight or obese, not being physically active, using tobacco, too much salt, too little potassium, too little vitamin D, too much alcohol, stress. (See www.mayoclinic.com)

As stated previously, the Plaintiff was advised by his doctor to quit smoking, lose weight and exercise. It is also clear that the Plaintiff's hypertension can be controlled by medication.

At the time the Plaintiff was seen by Dr. Fisher in July 2006 she noted initially that his blood pressure was 150/80 (T. 221). The Plaintiff was placed on Lovenox[5], Albuteral, Tylenol and Ambien. (T. 214). At the time of discharge she stated that his "blood pressure has been good at about 126/79" (T. 209). Dr. Fisher did not prescribe any medication for the Plaintiff but merely instructed him to quit smoking, exercise and lose weight. (Id.). In October 2008 when the Plaintiff was seen by Dr. Reyenga his blood pressure was 174/83 (227) and Dr. Reyenga did diagnose the Plaintiff with hypertension (T. 230). When the Plaintiff was seen by Dr. Kuykendall in May 2009 his blood pressure was 160/84 (T. 251). Dr. Kuykendall did not prescribe any medication to control the Plaintiff's blood pressure.

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535,

---

[4] Stage 1 hypertension is a systolic pressure ranging from 140 to 159 mm Hg or a diastolic pressure ranging from 90 to 99 mm Hg. Stage 2 hypertension is a systolic pressure of 160 mm Hg or higher or a diastolic pressure of 100 mm Hg or higher.  See www.mayoclinic.com  Viewed September 16, 2011.

[5]Lovenox is an anticoagulant (blood thinner) that prevents the formation of blood clots.

540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

### 3. Leg Pain

The Plaintiff alleged in his Disability Report filed September 2, 2008 that he had left leg problems and that his leg hurt and would go limp (T. 139).

There are no medical records concerning any difficulty with the Plaintiff's left leg until about one week prior to the hearing before the ALJ.   On July 26, 2006 when the Plaintiff went to the Johnson Regional Medical Center because he suspected he had suffered a heart attack he indicated to his admitting physician that he had only had an appendectomy in the past and that he had "always been healthy" (T. 210).  When the Plaintiff is seen for the CE by Dr. Reyenga in October 2008 there is no indication of any limitation in regards to the Plaintiff's left leg (T. 228) and no notation was made concerning the Plaintiff's ankles (Id).  Dr. Reyenga did diagnose the Plaintiff with chronic left ankle pain. (T. 230).

As noted above the Plaintiff never sought treatment for his left ankle pain.  In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

### 4. Treating Physician

On May 14, 2009, Scott P. Kuykendall, M.D., a one-time examining doctor, heard

wheezing in Plaintiff's chest, stopped his over-the-counter medication Primaterine Mist, and prescribed medication for his breathing problems (Tr. 13, 248-49). Although he only examined Plaintiff once, Dr. Kuykendall opined that Plaintiff was disabled due to osteoarthritis in the left ankle and chronic obstructive pulmonary disease (Tr. 13, 248). Otherwise, the record contains no evidence of any other medical treatment during the relevant time period.

It is the ALJ's job, not the Plaintiff's treating physician,  to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him.  *Cox v. Barnhart*  345 F.3d 606, 608 (C.A.8 (Ark.),2003)

Three months later, on August 17, 2009 which was one week before the hearing before the ALJ, Dr. Kuykendall completed a RFC questionnaire finding that the Plaintiff's pain would constantly interfere with his attention and concentration (T. 254), that he could only sit, stand/walk for less than 2 hours in an 8 hour workday (T. 255), he would need to take unscheduled breaks during a workday, he would have to use a cane, could never lift anything less than 10 pounds (T. 256), and could never twist, stoop, crouch, climb ladders or stairs (T. 257).

The first question of the questionnaire asked for the nature, frequency and length of contact.  Dr. Kuykendall responded "3 months".  It does not appear however that Dr. Kuykendall ever saw the Plaintiff again and his opinion is based on one visit by the Plaintiff to his office on May 14, 2009 because the SSA stated that the doctor should attach "all relevant treatment notes, radiologist reports, laboratory and test results that have not been provided previously" to the SSA.  The record shows that Dr. Kuykendall attached nothing to the questionnaire.

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

-12-

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

In this case Dr. Kuykendall only saw the Plaintiff one time and provided no substantive test to validate the conclusory opinion the Plaintiff was "totally disabled" as opposed to Dr. Reyenga who performed range of motion test on the Plaintiff in October 2008. (T. 226-230). Also, as pointed out previously, the Plaintiff informed his treating physician in July 2006 that he had "always been healthy" and had only had an appendectomy previously (T. 210). The Plaintiff's treating physician at that time told the Plaintiff to stop smoking and to exercise and lose weight. (T. 209).

Conclusory statements by a doctor, if unsupported by the medical record, do not bind the ALJ in his disability determination."); *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted ... where the treating physician's statements were conclusory in nature."). It was proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of treating physician Scott Kuykendall on Plaintiff's residual functional capacity, See *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

## C.  Credibility Determination

-13-

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC. (T. 12).

The Plaintiff made numerous complaints of subjective pain. In the Function Report the Plaintiff prepared he stated that he had trouble lifting, standing, walking, sitting, stair climbing, kneeling, squatting, reaching, bending, completing tasks and getting along with others. (T. 153). He said that he had problems with his back, legs, arms, and neck and that he could only lift 5-20 pounds for about 10-20 minutes before he needed to stop and rest.  He stated his ankles are bad and that he could not squat, stand or kneel. (Id.).

In a Disability Report of January 6, 2009 the Plaintiff stated that his condition had worsened because his left leg was hurting more, it was harder to breath, and that his blood pressure was "getting out of hand". (T. 168).  In a subsequent undated Disability Report the Plaintiff stated that he still was having problems standing and walking due to ankle and back and that he had COPD. (T. 176).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record

-14-

which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities;**

The Plaintiff completed a Function Report in September 2008 and indicated that he had no problems with his personal care (T. 149), that he prepares his own meals, feeds his chickens and dogs, can do the laundry, sweep, and occasionally cut the grass (T. 150). He acknowledged that he went outside everyday, could walk, drive and shop (T. 151). He stated that he could no longer fish which was his only hobby but that he spent time with others and that he went to the grocery store, gas station and drove his mother to her doctor's appointments on a regular basis. (T. 152). The Plaintiff acknowledged in his testimony that he lived with his mother who was 89 years old and that he took care of her and prepares her meals which are separate from his because she is a diabetic. (T. 45).

Such activities are inconsistent with disabling pain. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone,

drive, grocery shop, and perform housework with some help from a neighbor).  Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805. Cf. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir.2005);  *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir.1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

**(2) the duration, frequency, and intensity of the pain;**

On the Pain Report the Plaintiff prepared for the Commission on June 8, 2008 the Plaintiff stated that he was in pain all day, every day (T. 146) and that just about anything he does causes pain. (T. 147).  The Plaintiff testified that he got up at 5 a.m. each morning and he would clean around the house, wash dishes, cook breakfast and do little things.  That he could not do any one thing for more than 15 to 20 minutes. (T. 41)  He testified that he would lie down during the day around 1 or 2 p.m. and rest for 2 to 2 and ½ hours. (T. 41-42).

When the Plaintiff gave his Past History to Dr. Fisher in July 2006 he did not indicate any leg, back or ankle problems and did not indicate that he suffered any kind of chronic pain other than shortness of breath. The Plaintiff stated to Dr. Fisher that he had "always been healthy" (T. 210).

As discussed above the Plaintiff never sought any treatment for his COPD or his leg pain. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be

inconsistent with a finding of disability").

**(3) dosage, effectiveness, and side effects of medication;**

When the Plaintiff applied for benefits he listed his medications as over the counter Ibuprofin and Tylenol. (T. 147). *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

In July 2006 when the Plaintiff was seen at the Johnson Regional Medical Center for suspected angina the Plaintiff stated that he was not on any medication (T. 210) and Dr. Fisher did not prescribe any medications for pain but the Plaintiff was told to stop smoking, exercise and lose weight (T. 209).

When the Plaintiff was seen by Dr. Reyenga for his CE he stated that he was not on any medications. (T. 226). When the Plaintiff was seen by Dr. Kuykendall in May 2009 he was not on any medications for pain and was only on Primaterene mist for his COPD nor did Dr. Kuykendall prescribe any medication for pain but did prescribe medication for his COPD (T. 251). Later, after the Plaintiff started taking those medications, Plaintiff testified that his medications were "helping quite a bit" (Tr. 35-36). The Eighth Circuit has held that an impairment that can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

**(4) precipitating and aggravating factors; and**

The precipitating and aggravating factors in the present case is the Plaintiff's refusal to quit smoking and his weight.

-17-

### a. Obesity

Plaintiff argues that the ALJ should have re-contacted the doctors to determine how his obesity affected his osteoarthritis in his left ankle. See Pl.'s Br. at 8-9.  The Plaintiff did not raise obesity as a claim for in inability to work. (T. 139).  The fact that the plaintiff did not allege obesity as a basis for his disability in his application for disability benefits is significant, even if the evidence of obesity was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

The Plaintiff, however, did not testify that his obesity prevented him from working but stated that it was his COPD and pain in his left ankle (T. 35).  He stated that his leg hurt all the time (T. 38) and it did not matter if he was standing or sitting. (T. 37). It is impossible to understand how the Plaintiff's weight would have caused pain when the Plaintiff was sitting. Plaintiff's failure to testify at his hearing before the ALJ about any work related limitations caused by his obesity further undermines his claim. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003); *McNamara v. Astrue*, 09-1124 (2010).

While obesity can impose a significant work-related limitation, substantial evidence supports the ALJ's rejection of Plaintiff's claim. Nothing in Plaintiff's medical records indicates that a physician ever placed physical limitations on Plaintiff's ability to perform work-related functions because of his obesity.  (Tr. 207-11, 223-30, 234-36, 248-49). *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004).  An ALJ can consider the fact that the record does not reveal any limitations from obesity. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (no evidence obesity imposed any limitations).

The ALJ adopted the opinions of Dr. Reyenga, Dr. Crow and Dr. Mann

-18-

who were aware of the claimant's obesity. *See Prochaska v. Barnhart*, 454 F.3d

731, 736-37 (7th Cir. 2006) (deciding, when an ALJ adopts the opinion of a doctor

aware of an obesity claim, the ALJ's failure to consider the claim explicitly is

harmless error). The record shows that Plaintiff's obesity does not significantly limit his

physical or mental abilities to do basic work activities. See SSR 02-1p, 2000 WL 628049, (SSA

Sept. 12, 2002).

### b. Smoking

The Plaintiff admitted that he smoked a pack of cigarettes a day for most of his adult life

(T. 210). Most COPD is caused by long-term smoking and can be prevented by not smoking or

quitting soon after you start. This damage to your lungs can't be reversed, so treatment focuses on

controlling symptoms and minimizing further damage.  (Www.mayoclinic.com).

The Plaintiff  treating physician, in July 2006, talked with the Plaintiff at length "about

the importance of stopping smoking" (T. 209) but the Plaintiff continued to smoke. *See Kisling v.*

*Chater*, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment

may be grounds for denying an application for benefits). The Plaintiff testified before the ALJ

that he continued to smoke thus, the ALJ appropriately considered Plaintiff's failure to stop

smoking in making his credibility determination. *See Wheeler v. Apfel*, 224 F.3d 891 at 895.

Also, as noted above, the Plaintiff indicated that the Advair and Ventolin he was on that

the time of the hearing was "helping quite a bit" (T. 36).  Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813

-19-

F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming

a denial of benefits and noting that the claimant's impairments were responsive to medication).

*Warre v. Commissioner of Social Sec. Admin.*  439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

**(5) functional restrictions**

There were no functional restriction imposed in any of the medical records except for Dr.

Kuykendall which the court has previously determined were appropriately discounted by the

ALJ.

The ALJ also observed that Plaintiff appeared to be choosing not to work due to other

reasons than his alleged disabling conditions, especially since he only worked at substantial

gainful activity for one year in 1999 (Tr. 14, 124-132). An ALJ may consider a claimant's work

record in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004)

(ALJ may consider that a claimants sporadic work record reflecting relatively low earnings and

multiple years with no reported earnings that showed a lack of motivation to return to work);

*Hardieway v. Astrue*, 2009 WL 2928449 (E.D. Mo., 2009).

The Plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot

be wholly excused due to his claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383,

386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that

claimant attempted to obtain low cost medical treatment or that claimant had been denied care

because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that

"lack of means to pay for medical services does not ipso facto preclude the Secretary from

considering the failure to seek medical attention in credibility determinations.") (internal

quotations omitted). *Tate v. Apfel*  167 F.3d 1191, 1197 (C.A.8 (Ark.),1999).

-20-

Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms considering also that the Plaintiff failed to seek more frequent and substantive treatment.  *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

The RFC determined by the ALJ basically corresponded to the RFC assessment made by Dr. Ronald Crow (T. 238) and affirmed by Dr. Jerry Mann (T. 245) with the exception that the ALJ made allowance for the Plaintiff's COPD.  Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

## V.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this September 20, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-21-